IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                        Plaintiff,                    OPINION AND ORDER

  v.

                                                            12-po-004-slc

BRANDON C. HUMBLE,

                        Defendant.
_____

Brandon Humble has been issued civil violations for speeding, underage drinking, operating a motor vehicle with a prohibited alcohol concentration, operating a motor vehicle in violation of Wisconsin's absolute sobriety law for drivers who have not yet attained the legal drinking age, and operating a motor vehicle with an expired registration. Dkts. 1-5. These violations are alleged to have occurred on Fort McCoy, a federal territory within this district.

This court held a bench trial on September 24, 2012, after which defendant conceded that the government had met its burden of proving the underage drinking, expired registration and absolute sobriety citations. With respect to the violations for speeding and operating with a prohibited alcohol concentration, the court reserved ruling and allowed further briefing. During briefing, defendant conceded that the government had met its burden on the speeding ticket. Accordingly, the sole citation remaining for adjudication is the charge for operating with a prohibited alcohol concentration in violation of Wis. Stat. § 346.63(1)(b).

As briefed by the parties, the question before the court is whether the court should treat the intoxylizer test result administered approximately one hour after Humble was stopped as prima facie evidence that Humble had a prohibited blood alcohol concentration at the time he was driving or simply one piece of evidence relevant to that question. Having reviewed all the evidence and considered the arguments raised by the parties, I conclude that application of the presumption is appropriate because there is a rational connection between the proven fact that

Humble had a .11 BAC at the time of testing and the presumed fact that he had a prohibited BAC at the time of operation. I further find that, based on the chemical test result and the other evidence adduced at trial, the government has met its burden of proving by clear, satisfactory and convincing evidence that Humble committed the offense of driving with a prohibited alcohol concentration.

## FACTS

The relevant facts are as follows:

Fort McCoy is a United States military installation located within this district. On December 21, 2011, Fort McCoy police officer Colin McColley was working patrol duty. Among his duties was to run radar checks on vehicles traveling along State Highways 21 and 16, which traverse the installation. At approximately 2:30 a.m., while patrolling in a 55 mph zone of Highway 16, McColley noticed a vehicle traveling towards him at a relatively high rate of speed. McColley turned on his moving radar and clocked the vehicle at a speed of 70 mph. McColley turned his car around and proceeded to pull the other car over. The car was driven by defendant Brandon Humble.

As it turns out, another Fort McCoy police officer, Kevin Zebro, was stationed in his car in the same vicinity of Highway 16 and also was operating radar. Before McColley turned around and initiated the traffic stop, Zebro had also clocked Humble's car at 70 mph. Zebro was using a stationary radar device. Zebro responded to McColley's call for backup and joined him at the traffic stop.

McColley exited his car and walked up to talk to the driver of the now-stopped car. As the driver, Humble, rolled down the window, McColley smelled the odor of intoxicants. When asked for his license and registration, Humble struggled to get his wallet out of his pocket and fumbled about as he looked for his paperwork. McColley asked Humble whether he had been drinking; Humble replied that he had had approximately two beers two hours ago. McColley noticed signs indicating that Humble might be intoxicated, including slurred speech and red, glassy eyes. McColley suspected that Humble had lied about how much he had had to drink.

McColley had Humble step out of his vehicle and perform field sobriety tests, specifically, the horizontal gaze nystagmus test, the walk-and-turn test and the one- leg-stand test. Humble performed poorly on all three, with his performance worsening as time passed. Based on Officer McColley's observations, McColley arrested Humble for operating while intoxicated.

Humble was taken to the Fort McCoy patrol room, where he agreed to provide a breath sample. When asked again how much he had had to drink, Humble told Officer McColley that he had had five or six beers. After a 20-minute observation period had elapsed, Officer Zebro administered a breath test to Humble using an intoxylizer machine. The test was administered at 3:31 a.m. Humble first gave two insufficient samples, but then gave two good samples. The two valid samples, provided at 3:35 a.m. and 3:39 a.m., showed a blood alcohol concentration (measured in grams/210 liters) of 0.116 and 0.119, respectively. Because the machine reports the lowest of the readings, Humble's "official" test result was reported to be 0.11 g /210 liters.

At trial, Humble testified that he weighed 160 pounds at the time of the offense. He testified that on the night of his traffic stop, he had drunk five to seven beers from 9:45 p.m. to somewhere between 1:30 and 2 a.m., with his last drink being a 16-ounce can of Coors beer.

3

On cross-examination, Officer Zebro testified that on average, it takes between 30 to 90 minutes for alcohol to fully absorb into the body, with the rate affected by factors such as an individual's weight, when he last ate, and alcohol tolerance. Officer Zebro acknowledged that he was unable to say with scientific certainty what Humble's blood alcohol concentration was at the time he was driving.

## OPINION

To find Humble guilty of operating with a prohibited alcohol concentration, this court must be satisfied, by evidence which is clear, satisfactory and convincing, that Humble (1) operated a motor vehicle on a highway, and (2) had a prohibited alcohol concentration (in this case, .08 grams or more of alcohol in 210 liters of breath) at the time he operated the motor vehicle. Only the second element is in dispute.

The government relies on the result of the intoxylizer test administered to Humble approximately one hour after he was stopped as evidence establishing that Humble had a prohibited blood alcohol concentration at the time he was driving. Wis. Stat. § 885.235(1g) states that such test results, provided they were taken within 3 hours of the defendant's driving of a motor vehicle, are admissible evidence of the defendant's alcohol concentration at the time of driving. The statute goes on to provide that a chemical analysis showing that a person had an alcohol concentration of 0.08 or more is "prima facie" evidence that he or she had an alcohol concentration of 0.08 or more, without the need for expert testimony. § 885.235(1g)(c).

The Wisconsin Supreme Court has found that the evidentiary presumption set out in § 885.235(1g)(c) is permissive, not mandatory. *State v. Vick*, 104 Wis. 2d 678, 693, 312 N.W.2d 489 (1981). As the court explained in *Vick*, 104 Wis. 2d at 695, "[a] permissive

4

presumption allows, but does not require, the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant."

Humble insists that he has adequately rebutted the presumption by presenting evidence supporting a "blood alcohol curve" defense, that is, that he was still absorbing alcohol between the time he stopped driving and the time the test was administered an hour later, and therefore the test result was higher than his actual BAC at the time he was driving. Humble points to Wisconsin's Jury Instructions and accompanying committee notes, which provide that, "when there is an 'issue' relating to the defendant's position on the 'blood-alcohol curve,'" the jury should be instructed to treat the test result as relevant evidence rather than to give it prima facie effect. WI JI-CRIMINAL 2660 and WI JI-CRIMINAL 2600 Introductory Comment, Sec. VII. As explained by the jury instruction committee, removing the presumption is appropriate in such cases "since there may be no 'rational connection' between the alcohol concentration at the time of the test and a prohibited alcohol concentration at the time of driving." The Committee cites to *Ulster Co. v. Allen*, 442 U.S. 140, 157 (1979), in which the Supreme Court explained that permissive evidentiary presumptions are constitutionally sound unless, "under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." The test is whether it can be said with substantial assurance that the inferred fact more likely than not flowed from the proven fact on which it is made to depend. *Allen*, 442 U.S. at 265; *Leary v. United States*, 395 U.S. 36 (1969).

Precisely how much and what type of evidence is required to create an "issue" with respect to the blood-alcohol curve and to render use of the presumption improper is unclear. It seems apparent, however, that because the defense would theoretically be available in a large

5

number of DWI cases, the defendant must do more than simply elicit general information regarding the existence of the curve and the factors that affect it.

      This is essentially what Humble has done here. As the government points out, Humble cites the following evidence in support of his blood-alcohol curve argument: 1) evidence that he told the officers that he had eaten "yesterday"; 2) he drank five to seven beers over about a four-hour period of time, ending between 30 and 60 minutes before he was pulled over; 3) he weighed 160 pounds on the night of arrest; 4) absorption of alcohol by the body takes between 30 and 90 minutes; 4) his performance on the field sobriety tests worsened as time went on; 5) his second breath sample was .003 higher than the first sample taken four minutes earlier; and 6) alcohol is eliminated at a rate of .015 grams per hour. However, Humble did not introduce any evidence that would explain how these facts relate to each other or how one could calculate where on the curve Humble was at the time he was stopped. For example, Humble did not introduce a blood alcohol curve chart, explain the relevance of his weight, testify as to how much he ate or when, or perform any retrograde extrapolation that might show that his blood alcohol level was lower than .08 at the time he was driving. Without more detail to fill in the gaps and draw the necessary connections, the mere fact that Humble may have had some unabsorbed alcohol in his system at the time he was stopped is insufficient to defeat application of § 885.235(1g)(c).

      This is particularly so given the other evidence of intoxication present in this case. In addition to the chemical test, the government presented evidence that when Humble was pulled over his eyes were glassy, his speech was "thick-tongued", his motor skills were impaired even while he was still in the car, and he performed poorly on the field sobriety tests. Furthermore, his test result of 0.11 was not "on the line," but was substantially higher than the statutory

prohibition of 0.08. Based upon all the evidence, I am satisfied that the presumed fact that Humble had a .08 or higher at the time of driving more likely than not flows from the proven fact of his .11 BAC at the time of testing. Accordingly, I find that the government has proven, by evidence that is clear, satisfactory and convincing, that Humble is guilty of the offense of operating a motor vehicle with a prohibited blood alcohol concentration.

ORDER

Now, therefore, IT IS ORDERED that Brandon Humble is found guilty of the following CVB Violation Notices: Number 3029658, Number 302659, Number 302660, Number 302663 and Number 302664 (dkts. 1-5).

The court will contact the parties to schedule a date for sentencing.

Entered this 16th day of May, 2014.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge